UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARBARA A. FISHER,

                                        Plaintiff,                    DECISION AND ORDER

-vs-
                                                                      6:19-CV-6283 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

## INTRODUCTION

Plaintiff Barbara A. Fisher ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Oct. 14, 2019, ECF No. 11; Def.'s Mot., Jan. 10, 2020, ECF No. 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is denied, the Commissioner's motion (ECF No. 15) is granted, and the Clerk of Court is directed to issue a judgment for the Commissioner and close this action.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court. Plaintiff protectively filed her DIB application on January 7, 2015, alleging an onset date of February 11, 2014.

1

Transcript ("Tr."), 195, 202, Jul. 15, 2019, ECF No. 7. On the same date, Plaintiff also protectively filed an application for SSI benefits. Tr. 187. In her "Disability Report," dated February 24, 2015, Plaintiff reported multiple conditions as limiting her ability to work: severe depression, forgetfulness, effects of chemotherapy on the brain, two bulging discs on the right side of her neck, carpal tunnel, pain in her neck, pain in her right arm from shoulder to fingertips, high blood pressure, anxiety attacks, difficulty sleeping, hot flashes, and acid reflux. Tr. 287. On April 15, 2015, the Commissioner determined that Plaintiff was not disabled, and that she did not qualify for either DIB or SSI benefits. Tr. 124. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 143.

Plaintiff's request was approved, and a hearing was held on October 2, 2015 in Rochester, New York. Tr. 31. Plaintiff appeared with her attorney, Mary Comerford. Tr. 31. Vocational expert Julie Andrews testified by telephone. Tr. 45–52. At the ALJ's invitation, Attorney Comerford summarized Plaintiff's case:

> [T]his case involves a younger individual under Social Security's rules with both a Title II and a Title XVI claim. At this point [Plaintiff] suffers from a variety of impairments, both exertional and non-exertional [such as] neck pain . . . radiating arm pain and shoulder impingement, diagnosis of carpal tunnel syndrome, obstructive sleep apnea . . . major depressive disorder, anxiety disorder, foot pain diagnosed as hallux rigidus and osteophytes, and recurrent headaches.

> [Plaintiff] is status post breast cancer . . . and the record reflects a high degree of anxiety after the breast cancer that I believe impacts her mental health functioning . . . . [A] treating therapist through Strong Behavioral Health provided an assessment to DHS where she gives function by function assessments of a number of aptitudes needed for work and indicates that those would be moderately to very impaired.

Tr. 34–35. On January 11, 2016, the ALJ found that Plaintiff was not disabled. Tr. 19.

On April 6, 2016, the Commissioner's Appeals Council denied Plaintiff's request for review. Tr. 1.

Plaintiff sought judicial review of the Commissioner's decision, and a hearing was held in this district before Judge Feldman on May 5, 2017. Tr. 921. Attorney Comerford again represented Plaintiff, and argued that the ALJ erred when he assigned "some weight" to the medical opinions of two consultative examiners who identified exertional limitations caused by Plaintiff's carpal tunnel syndrome, but did not incorporate those limitations into his RFC determination. Tr. 923. Judge Feldman rendered an oral decision finding that the ALJ "failed to provide any indication . . . that he made a meaningful assessment of [P]laintiff's work-related abilities on a function-by-function basis." Tr. 936. Judge Feldman also found that the ALJ erred by assigning "little weight" to the opinion of one of Plaintiff's treating doctors, Dr. Catherine Tan, M.D. Tr. 943. The matter was therefore remanded to the Commissioner for additional proceedings. Tr. 943.

Upon remand, a second hearing was held before the ALJ in Rochester, New York, on November 16, 2018. Tr. 880. Plaintiff was represented by attorney Joseph Palladino, and vocational expert Dr. Peter A. Manzi testified by telephone. Tr. 880. Attorney Palladino summarized Plaintiff's case:

> [Plaintiff] suffers from multiple physical impairments, primarily issues with her bilateral shoulders, bilateral carpal tunnel syndrome, and cervical spondylosis . . . [W]e have moved for a closed period of disability in this case going through [Plaintiff]'s left carpal tunnel release, which was on September 14, 2016.
>
> Since that time, since she had the carpal tunnel surgery in the left hand, her condition did improve slightly, enough for her to return to work since that time . . . on a full time basis.

3

Tr. 883–884.

In his decision on December 19, 2018, the ALJ found that Plaintiff was not disabled during the period between February 11, 2014 and September 14, 2016, and denied both DIB and SSI benefits. Tr. 871. Plaintiff does not appear to have filed any exceptions with the Commissioner's Appeals Council, and the Appeals Council did not otherwise assume jurisdiction. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.984 ("the decision of the [ALJ] will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction").

## LEGAL STANDARDS

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for DIB benefits, the claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional

capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).  At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). It is not the reviewing court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). Thus, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

DISCUSSION

In this case, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2019. Tr. 862. At step one

of the five-step evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity between February 11, 2014, the alleged disability onset date, and September 14, 2016, when Plaintiff returned to full-time work. Tr. 862. At step two, the ALJ determined that Plaintiff has severe mental and physical impairments: degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, right shoulder impairment, status-post breast cancer, obesity, depressive disorder, and anxiety disorder. Tr. 863.

At step three of the process, the ALJ determined that none of Plaintiff's impairments, mental or physical, considered either individually or in combination, meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 863. Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except:

> [Plaintiff ] could occasionally handle and finger bilaterally, and occasionally push, pull, and reach in all directions with the upper extremities bilaterally. Moreover, [Plaintiff] could occasionally flex, twist, extend and rotate the cervical spine. Furthermore, [Plaintiff] is limited to performing low stress and simple work that involved only occasional decision-making.

Tr. 865.

Based on this RFC, and on the testimony of the vocational expert, at step four the ALJ found that Plaintiff was unable to perform her past relevant work as a fast food

worker, a receptionist, and a commercial cleaner. Tr. 870. Nevertheless, the ALJ determined at step five that jobs exist in significant numbers in the national economy that she can perform. *See* 20 C.F.R. § 404.1569, § 416.969. Relying on the vocational expert's testimony, the ALJ found that a person of Plaintiff's age, education, work experience and RFC could perform such jobs as a "counter clerk" (68,820 jobs) and a "furniture rental clerk" (32,029 jobs). Tr. 871. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB or SSI. Tr. 871.

In seeking reversal of the Commissioner's decision, Plaintiff makes three arguments. First, Plaintiff argues that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles ("D.O.T."), and the ALJ failed to satisfy his duty to reconcile the expert testimony with the D.O.T. Pl. Mem. of Law, 18–22, Oct. 14, 2019, ECF No. 11-1. Second, Plaintiff argues that the ALJ erroneously evaluated the opinions of multiple treating physicians. Pl. Mem. of Law, 19–25. Lastly, Plaintiff argues that remand is warranted because the ALJ's RFC determination is not supported by substantial evidence.

The Commissioner disputes Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

<u>The ALJ's Duty to Reconcile Expert Testimony and the D.O.T.</u>

The following exchange, between Plaintiff's attorney and the vocational expert, occurred at the hearing before the ALJ in November 2018:

> [Attorney Palladino]: Dr. Manzi, for Hypothetical No. 1 can we assume an individual who's capable of light work, but could, with the following additional limitations, occasionally handle and finger bilaterally; occasionally push, pull, and reach overhead in all directions with the right

7

upper extremity . . . . And frequently reaching in all directions with the left
upper extremity; and occasionally flex, twist, extend or rotate the cervical
spine; and would be limited to low stress or simple work, with only
occasional decision-making.

. . . .

[Dr. Manzi]: All right. Well there are only two light, unskilled jobs that
meet that criteria in the whole [Dictionary of Occupational Titles ("D.O.T.")
database] . . . One example is counter clerk --

[Attorney Palladino]: Say it again. Counter clerk?

[Dr. Manzi]: -- yes – photo finishing, 249.326.010. It's light, unskilled, SVP
of two, 68,000 --

. . . .

. . . [and] [f]urniture rental clerk, 295.357-018, light, unskilled, SVP of two,
32,029 jobs.

Tr. 900–901. At the conclusion of his testimony, Dr. Manzi stated that his "testimony was
consistent with the DOT and other sources." Tr. 906. The ALJ relied upon the vocational
expert's testimony at step five of the five-step evaluation process to find that other jobs
existed in the national economy that an individual with Plaintiff's age, education, work
experience and RFC could perform. Tr. 871.

The Second Circuit recently adopted the reasoning of the Eleventh Circuit with
respect to the Commissioner's duty to identify and resolve apparent conflicts between the
D.O.T. and vocational expert testimony. *See Lockwood v. Comm'r of Soc. Sec. Admin.*,
914 F.3d 87, 93 (2d Cir. 2019) (discussing *Washington v. Comm'r of Soc. Sec.*, 906 F.3d
1353, 1366 (11th Cir. 2018)). The Second Circuit held that the Commissioner's duty to
reconcile is "not fulfilled simply by taking the [vocational expert] at his word," but rather
imposes "an independent, affirmative obligation on the part of the ALJ to undertake a

8

meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [vocational expert] if there is one." *Id.*

Here, Plaintiff argues that the ALJ committed reversible error by failing to reconcile Dr. Manzi's testimony with the D.O.T. as it related to Plaintiff's handling, fingering, and reaching, as well as the performance of simple work and decision-making. Plaintiff points out that the D.O.T. entry for counter clerk is not 249.326.010, but rather 249.362-010, and requires the "frequent" ability to reach, handle and finger, while the ALJ's RFC finding limits Plaintiff to "occasionally" handling and fingering. DICOT 249.362-010 (G.P.O.), 1991 WL 672316. In addition, Plaintiff states that the "reasoning level three" required of a furniture rental clerk, and the "reasoning level four" required of a counter clerk are inconsistent with the ALJ's RFC finding limiting Plaintiff to "low stress and simple work that involve[s] only occasional decision-making." DICOT 249.362-010 (G.P.O.), 1991 WL 672316; DICOT 295.357-018 (G.P.O.), 1991 WL 672589.

To begin with, Plaintiff makes much of the discrepancy between the ALJ's RFC findings regarding Plaintiff's limitations and the requirements for D.O.T. number 249.362-010, Counter Clerk (Telephone and Telegraph Industry). DICOT 249.362-010 (G.P.O.), 1991 WL 672316. However, as the Commissioner points out, Plaintiff fails to recognize that there are two entries in the D.O.T. for a "Counter Clerk:" the entry cited by Plaintiff on the one hand, and D.O.T. number 249.366-010, Counter Clerk (Photofinishing Industry) on the other hand. DICOT 249.366-010 (G.P.O.), 1991 WL 672323. The Counter Clerk (Photofinishing Industry) entry precisely matches Dr. Manzi's testimony, which indicated "photofinishing," "light work," "unskilled" and

"occasional" handling and fingering. *Id.* Moreover, it requires a "reasoning level" of only two, and for the most part a "Low Degree of Aptitude Ability." *Id.* Therefore, as it pertains to the position of "Counter Clerk," the Court finds that there was no inconsistency for the ALJ to reconcile between the D.O.T. and the vocational expert's testimony.

There was also no inconsistency for the ALJ to reconcile between the D.O.T. and the vocational expert's testimony with regards to the position of "Furniture Rental Clerk."[1] Plaintiff accurately states that D.O.T. number 295.357-018, "Furniture-Rental Consultant," requires a reasoning level of three. DICOT 295.357-018 (G.P.O.), 1991 WL 672589. A reasoning level of three involves the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations."

Multiple courts in the Second Circuit, as well as the Seventh and Eighth Circuits, respectively, have held that a claimant's RFC limitation to simple work comports with a job with a reasoning level of three. *Maenza v. Colvin*, No. 14-CV-6596, 2016 WL 1247210, at *14 (W.D.N.Y. Mar. 24, 2016) (citing *Jones-Reid v. Astrue*, 934 F.Supp.2d 381, 408-09 (D. Conn. 2012); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Renfrow v. Astrue*, 495 F. 3d 918, 921 (8th Cir. 2007)). After reviewing the record here, the Court reaches the same conclusion. As Dr. Manzi noted, the furniture rental clerk position is classified as having an SVP of two and requiring unskilled work. Tr. at 901. 20 C.F.R. § 404.1568(a)

---

[1] The entry in the D.O.T. at number 295.357-018 is actually titled, "Furniture-Rental Consultant." However, the designation "Rental Clerk, Furniture" is listed as an "Alternate Title." DICOT 295.357-018 (G.P.O.), 1991 WL 672589.

defines "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." The record shows that Plaintiff's background and cognitive abilities – she provided housing to a friend who was unable to care for himself (Tr. 38); owns and maintains her own home (Tr. 911); is raising a teenage daughter (Tr. 912–13); was able to return to employment immediately following her surgery to repair her carpal tunnel syndrome (Tr. 885–888) – appears to equal those required by a reasoning level three. Moreover, during oral argument in front of Judge Feldman in 2017, although Plaintiff's attorney presented several arguments against the physical limitations in the ALJ's RFC from his 2016 determination, she did not contest the ALJ's RFC finding that included only a single mental limitation: "requires work that does not require production-level pace." Tr. 12.

Accordingly, the Court sees no error in the ALJ's judgment with respect to the vocational expert's testimony.

<u>The Treating Physician Rule</u>

For claims filed before March 27, 2017, 20 C.F.R. § 404.1527 requires that the "treating physician rule" be applied when determining a claimant's disability status. § 404.1527(c)(1) provides that, generally speaking, the medical opinion of a source who has examined the claimant is entitled to greater weight than a source who has not. Further, § 404.1527(c)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.[2]

"[I]t is well settled that the ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008). Nevertheless, the Second Circuit has cautioned that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Indeed, the regulations require that the treating source's medical opinion be controlling *only* if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(c)(2).

Where the treating source's medical opinion does not meet these criteria, the ALJ is required to give "good reasons" for the weight assigned to the opinion. *Id*. The ALJ must determine the weight of the opinion by analyzing the so-called "*Burgess* factors:" length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion by relevant evidence, consistency with the record as a whole, the source's level of specialization, and other relevant factors. *See Burgess,* 537 F.3d at 128–130 (discussing 20 C.F.R. §

---

[2] For claims filed after March 27, 2017, the rules in § 404.1520c apply to the evaluation of opinion evidence.

404.1527(c)).

An ALJ's failure to explicitly apply the *Burgess* factors when assigning weight to a treating physician's opinion is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citing *Selian v. Astrue*, 708 F.3d 409, 419–20 (2d Cir. 2013)). Nevertheless, if "a searching review of the record" assures the reviewing court that the procedural error was harmless, and "that the substance of the treating physician rule was not traversed," then the reviewing court will affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

In the present case, Plaintiff argues that the ALJ improperly rejected multiple opinions from her treating physician, Dr. Catherine Tan, M.D., without providing good reasoning or appropriately considering the treating physician rule. Specifically, Plaintiff states that the ALJ assigned "partial weight" to two opinions from Dr. Tan, but failed to explicitly discuss the *Burgess* factors or otherwise provide good reasons, and improperly "cherry-picked" evidence to support his finding. Pl. Mem. of Law at 18–25. Plaintiff states that this error harmed her because had the ALJ given Dr. Tan's opinion controlling weight, Plaintiff would have necessarily been found disabled. The Court disagrees.

The two medical opinions from Dr. Tan that are at issue are both form reports, entitled "Physical Assessment for a Determination of Employability," that Dr. Tan completed for the Monroe County Department of Human Services. On August 22, 2014, Dr. Tan completed the form to indicate that Plaintiff's foot pain would prevent her from standing for more than twenty hours per week, and that she was unable to lift more than twenty pounds. Tr. 829. In completing the worksheet to estimate Plaintiff's functional

13

limitations in an eight hour work day, Dr. Tan indicated that Plaintiff would be "very limited" in walking or standing, and in "pushing, pulling, and bending," which was defined as 1–2 hours of that activity. Tr. 831. However, Dr. Tan indicated that there was "no evidence of limitations" with respect to Plaintiff's sitting. Tr. 831. Dr. Tan's second report, dated March 9, 2015, is virtually identical, except for the fact that Dr. Tan also recommended the accommodation, "sitting at a desk." Tr. 839. The ALJ assigned Dr. Tan's opinion "partial weight" because the ALJ found Dr. Tan's opinion to be "inconsistent with her own clinical examinations," and "there is insufficient evidence to establish that [Plaintiff] had such significant restrictions walking . . . ." Tr. 868.

Because the ALJ did not explicitly acknowledge the "treating physician rule" or explicitly utilize the *Burgess* factors to explain why Dr. Tan's opinions were not entitled to controlling weight, the Court finds that the ALJ committed procedural error. Therefore, the Court has conducted "a searching review of the record to assure [that Plaintiff] received the rule's procedural advantages." *Halloran* 362 F.3d at 32. This searching review has satisfied the Court that Dr. Tan's opinions were not well-supported by clinical findings and was contradicted by substantial evidence in the record.

Dr. Tan's report was prepared on a standardized worksheet form issued by the Monroe County Department of Human Services. The Second Circuit has previously criticized such standardized forms as "only marginally useful." *Klodzinski v. Astrue*, 274 Fed. App'x 72, 73 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31 n. 2)). With respect to functional limitations, Dr. Tan simply circled one of three options indicating that Plaintiff's ability to stand or walk was limited to less than two hours per day, and another

box indicating that there was no evidence of any limitations in Plaintiff's ability to sit. Tr. 839. Although the form indicated that these were medical opinions, the remainder of Dr. Tan's report contained few details regarding the severity of Plaintiff's medical condition.

Furthermore, Dr. Tan's opinion is inconsistent with other substantial evidence in the record. Dr. Tan's treatment notes on several occasions acknowledge Plaintiff's chronic pain and difficulty with her right wrist, shoulder and neck (Tr. 728, 737, 1643). However, these notes are devoid of specific functional analysis, and are interspersed with other more positive treatment notes such as that Plaintiff is "doing well" (Tr. 1639), and that she mows the lawn, vacuums the house, and keeps up with the pool (Tr. 1617). Additionally, Dr. Tan conducted a physical on Plaintiff on September 30, 2015 that was largely unremarkable. Tr. 808. Perhaps more to the point, Dr. Tan's opinion is inconsistent with the consultative examination of Dr. Toor, who evaluated Plaintiff approximately two weeks after Dr. Tan's second report, and provided a specific functional analysis and opinion that indicated limitations consistent with those reflected in the ALJ's RFC determination. Tr. 745.

The Court therefore concludes that "the substance of the treating physician rule was not traversed," and that Plaintiff was not harmed by the ALJ's procedural error. *Halloran* 362 F.3d at 32.

<u>Substantial Evidence</u>

Lastly, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to assign controlling weight to any physical

opinion on the record. Pl. Mem. of Law at 26. In other words, Plaintiff argues that because the ALJ did not assign controlling weight to the opinions of either of Plaintiff's treating physicians (Dr. Tan and Dr. Gonzalez), or to the opinion of the consultative examiner (Dr. Toor), the ALJ necessarily relied upon his own lay judgment and the record's raw medical data to determine Plaintiff's physical functioning. Pl. Mem. of Law at 27. The Court disagrees.

As indicated above, provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). The reviewing court will defer to the Commissioner where his finding is supported by substantial evidence, as it is not the reviewing court's function to determine *de novo* whether a plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).

16

Where the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, the ALJ need not select a single right opinion and make an RFC finding based solely on that opinion. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 8 (2d Cir. 2017). Rather, in making a determination of a claimant's RFC, the ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013).

Here, although the ALJ ultimately assigned only "partial weight" to the opinions of Dr. Tan and Dr. Toor, and "little weight" to the opinion of Dr. Gonzalez, his decision demonstrates that he carefully considered the opinions and treatment notes of each source. For instance, as noted above, not only did the ALJ consider Dr. Tan's two opinion statements indicating that Plaintiff was "very limited" in walking, standing, and pushing, pulling and handling, he also considered the "physical examinations" in Dr. Tan's treatment notes. *See, e.g.,* Tr. 866 (discussing a March 2015 assessment in which Plaintiff "showed some tenderness in the wrists bilaterally," but "otherwise had a normal physical evaluation.")

In addition, the ALJ considered Dr. Gonzalez's "Employability Statement" on September 15, 2015, which opined that Plaintiff "is unable to participate in activities except treatment and/or rehabilitation at this time," but noted that that statement also indicated that Dr. Gonzalez "strongly rel[ied] on [Plaintiff's] subjective report of symptoms to determine the limitations. (Tr. 816, 868). Further, the ALJ discussed

17

treatment notes from Dr. Marcia Krebs, M.D. (Tr. 866–867), an MRI from Dr. Gary Hollenberg, M.D., and EMG studies from nurse practitioner Christine Bowen and Dr. David Speech, M.D. (Tr. 866–867). Because the ALJ reached his RFC determination based on a comprehensive review of both sides of the evidence in the record, the Court finds that the ALJ's determination was adequately supported by substantial evidence.

CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 11) is denied; and it is further

ORDERED that the Commissioner's motion (ECF No. 15) is granted; and it is further

ORDERED that the Clerk of Court issue a judgment for the Commissioner and close this action.

DATED:      September 28, 2020
            Rochester, New York


                          /s/ Charles J. Siragusa
                          CHARLES J. SIRAGUSA
                          United States District Judge

18